

**SIGNED this 12th day of June, 2018**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE

In re:

No.  1:13-bk-16079-SDR
Chapter 7

HC LIQUIDATION, INC.,

     Debtor,

HARDWICK CLOTHES, INC.,

     Plaintiff,

v.

Adversary Proceeding
No.  1:18-ap-1005-SDR

RICHARD P. JAHN, JR., TRUSTEE,

     Defendant.

*Appearances for the Plaintiff*
        Jerrold D. Farinash
        Farinash & Stofan
        100 West MLK Blvd., Ste. 816
        Chattanooga, TN 37402

*Appearances for the Defendant*
        James A. Fields
        Samples, Jennings, Ray & Clem, PLLC
        130 Jordan Dr.
        Chattanooga, TN 37421

# MEMORANDUM OPINION

## I.    Procedural History

On January 18, 2018, Hardwick Clothes, Inc. ("Plaintiff" or "Hardwick") filed a

complaint in this adversary proceeding against Richard P. Jahn, Jr., Chapter 7 Trustee of the

debtor's bankruptcy estate ("Trustee" or "Defendant"). [Doc. No. 1, Complaint].[1] The

controversy between the parties stems from an asset purchase agreement ("APA") and bill of sale

(together the "agreement") entered into between the Plaintiff and the debtor, HC Liquidation,

Inc. This court approved the sale on June 6, 2014. [*Id.* at 1]. The Plaintiff seeks a declaratory

judgment by the court that certain assets were sold pursuant to the terms of the agreement. [*Id.* at

1-3]. The Plaintiff has identified $376,082.91 in "disputed property," which it alleges the Trustee

has exercised control over in contravention of the agreement. [*Id.* at 3].

The Trustee filed an answer on February 16, 2018. [Doc. No. 6]. In his answer, the

Trustee does not contest the terms of the APA and bill of sale as stated in the complaint. [*Id.* at 1-

3]. However, he argues that the terms are subject to a different interpretation than that put forth

by the Plaintiff. [*Id.*]. The Trustee contends that the parties to the agreement did not intend for

the disputed property to be included in the sale of assets and that he has properly exercised

---

1 All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 1:18-ap-1005-SDR,
unless otherwise noted.

control over them. [*Id.*]. The Trustee also raises the affirmative defenses of estoppel, failure of

consideration, and laches. [*Id.* at 4].

On February 26, 2018, the Plaintiff filed a motion for partial judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for partial summary

judgment pursuant to Federal Rule of Civil Procedure 56(a). [Doc. No. 9]. The Plaintiff's motion

seeks a declaratory judgment "that all of the assets of the Debtor, except certain Excluded

Assets, were sold to Hardwick Clothes, Inc., via a Bill of Sale signed June 16, 2014." [*Id.* at 5].

In its accompanying memorandum, the Plaintiff contends that the terms of the APA and bill of

sale outlined in the complaint, unambiguously reflect that "all assets" of the debtor other than

utility deposits were sold to the Plaintiff. [Doc. No. 10, at 6]. Accordingly, the Plaintiff argues

that the disputed property falls within the contractual description of "all assets" and that the

Trustee, therefore, has improperly exercised control over the disputed property. In seeking only a

partial judgment, the Plaintiff asks that the court reserve ruling on any issues related to: (1) what

assets were in existence on June 16, 2014; and (2) the reasonable and necessary costs and

expenses incurred by the Trustee in collecting and preserving the disputed assets. [Doc. No. 9, at

5].

The Trustee filed a motion to defer consideration of the Plaintiff's motion pending the

close of discovery. [Doc. No. 12]. The Trustee essentially argued that because he was not a party

to the agreement, he would need time to conduct discovery regarding whether the parties

intended to convey the disputed property and what actions were taken by the Plaintiff in relation

to the disputed property after the closing of the sale. [Doc. No. 12, at 6]. In an order and

memorandum opinion entered April 23, 2018, the court granted in part and denied in part the

Trustee's motion. [Doc. No. 18]. Specifically, the court deferred consideration of the Plaintiff's

motion for partial summary judgment but found that it was not appropriate to defer consideration

of the Plaintiff's motion for partial judgment on the pleadings. The court provided leave for the

Trustee to file a response to the Plaintiff's motion for partial judgment on the pleadings, and the

Trustee filed an objection to the Plaintiff's motion on May 7, 2018.

The Plaintiff's motion for partial judgment on the pleadings is now ripe for the court's

consideration. For the reasons explained below, the court concludes that the Plaintiff's motion

should be denied. To the extent that the Trustee's objection seeks judgment on the pleadings in

his favor, the court concludes that such a request also should be denied for the same reasons.

## II.      Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this

district, provide this court with jurisdiction to hear and decide this adversary proceeding.  The

parties agree that the Plaintiff's action is a core proceeding and consent to this court's entry of

judgment. [Doc. No. 1, at 1; Doc. No. 6, at 1]; s*ee* 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O).

## III.     Factual Allegations

Hardwick is the successor in interest to Jones CapitalCorp, LLC. [Doc. No. 1, at ¶ 3]. As

the successor in interest of Jones CapitalCorp, LLC, Hardwick purchased assets of the debtor

pursuant to an APA approved by order of this court entered on June 6, 2014. [*Id.*]. A bill of sale

was executed to consummate the transfer on June 16, 2014.[2] [*Id.* at ¶ 13]. The Plaintiff contends

that it purchased "all" of the assets of the debtor. [*Id.* at ¶ 3]. The Trustee denies this allegation,

contending in his answer that the Plaintiff purchased "substantially all" of the assets with the

specific exclusion of certain assets. [Doc. No. 6, at ¶ 3].

---

2 The court notes that while the complaint states that the bill of sale was executed at the time the court approved the
sale, which was June 6, 2014 [Doc. No. 1, at ¶ 13], the bill of sale included in the closing documents attached to the
complaint is dated June 16, 2014. [Doc. No. 1-4, at 132].

In its complaint, the Plaintiff identifies several assets, which it terms "disputed property," over which it alleges that the Trustee has improperly exercised control. [Doc. No. 1, at ¶ 9]. These assets are identified in the complaint as:

| | |
|---|---|
| Blue Cross Blue Shield | $41,543.35 |
| State of Tennessee Worker's Compensation Bond | $176,300.00 |
| Tax refund | $7,150.00 |
| Michigan 2014 Tax refund | $700.00 |
| 12/2013 941 refund | $19.69 |
| 2013 940 Tax refund | $369.87 |

[*Id.*]. Additionally, the Plaintiff alleges that the Trustee exercised control over the remainder of a State of Tennessee Worker's Compensation bond in the amount of $150,000, which is held as a certificate of deposit ("CD") at First Tennessee Bank. [*Id.* at ¶ 10]. The Plaintiff seeks a declaratory judgment that this disputed property, totaling $376,082.91, is the Plaintiff's property and requests that the court order the Trustee to return the property to the Plaintiff. [*Id.* at 4-5].

The Trustee admits that he has collected the funds that the Plaintiff identifies as disputed property with some exceptions and clarifications. [Doc. No. 6, at ¶¶ 9-10]. First, the Trustee contends that the amount of the 12/2013 941 refund was in fact $17.69, not $19.69. [*Id.* at ¶ 9]. Second, the Trustee states that "there was never a 'Worker's Compensation Bond' to collect, as alleged." [*Id.*]. Rather, the Trustee admits that he has "collected $176,300 from reductions in the Debtor's deposited funds at First Tennessee Bank." [*Id.*]. Third, the Trustee admits that he holds a CD in the amount of $150,000 at First Tennessee Bank but notes that it is pledged to the State of Tennessee. [*Id.* at ¶ 10]. Finally, he denies the Plaintiff's characterization of these assets, other than the First Tennessee CD, as "disputed property" because he contends that they involve "post-

5

closing transactions." [*Id.*].

The Plaintiff's claim to the disputed property is based on the contractual language of the

APA and bill of sale. In his answer, the Trustee does not dispute the terms of the agreement as

stated in the complaint and set out below, but disputes the Plaintiff's interpretation of the

contractual language. [*Id.* at ¶¶ 4, 5, 6, 7, 12, 13].

As alleged in the complaint, the APA contains the following language in Paragraph

1.02(b) defining "Assets":

> **"Assets"** shall mean, collectively, all of the Debtor's assets of any nature
> whatsoever, real, personal or mixed, known or unknown including, but not limited
> to the fee interest in the Land and Improvements, Accounts Receivable,
> Equipment, Inventory, Supplies, Intellectual Property, all of Seller's memorabilia,
> historical artifacts, historic samples, historic clothing, archives, relics, keepsakes,
> souvenirs, pictures, books, accounting records, newspaper articles, Intangible
> Personal Property, Records, Assumed Contracts, pre-paid assets, refunds,
> unclaimed funds, customer ***and other deposits***, including utility deposits, and
> other intangible and tangible assets, whether real, personal, or mixed, which are
> located upon the Land or owned and held for the use by Seller in connection with
> the Business but excluding the Excluded Assets in all cases.

[Doc. No. 1, at ¶ 4 (emphasis original to complaint); Doc. No. 1-4, at 7].

Paragraph 1.02(h) of the APA defines which assets were excluded from the sale:

> **"Excluded Assets"** shall mean those items mutually identified and agreed to
> by the Parties hereto in writing, *IF ANY,* as provided in Section 2.05 of this
> Agreement.

[Doc. No. 1, at ¶ 5 (emphasis original to complaint); Doc. No. 1-4, at 8].

Section 2.05 of the APA covers "Excluded Assets" and provides as follows:

> **Excluded Assets.** In entering into this Agreement, Purchaser shall not acquire, as
> a result of the Transaction set forth herein, any interest in any of the Excluded
> Assets, such Excluded Assets described more particularly on Exhibit 2.05 to this
> Agreement, including without limitation the rights relating to certain utility
> deposits set forth on Exhibit 2.05, and specifically disclaims any interests
> whatsoever therein. Subsequent to the Effective Date of this Agreement until the
> Closing, Purchaser and Seller *may* mutually agree to amend, modify, or
> supplement such exhibit.

[Doc. No. 1, at ¶ 6 (emphasis original to complaint); Doc. No. 1-4, at 12]. The complaint alleges

that any assets that were to be excluded from the APA, other than utility deposits, were to be

added to Exhibit 2.05 prior to closing; however, none were. [Doc. No. 1, at ¶ 6]. The Trustee

contends that the certificate of deposit at issue "was never contemplated" by the parties to be one

of the assets transferred by the debtor to the Plaintiff. [Doc. No. 6, at ¶ 6].

Paragraph 1.03 of the APA, titled "General Construction," provides that, "The word

'including' means 'including without limitation.'" [Doc. No. 1, at ¶ 7; Doc. No. 1-4, at 11].

After the court approved the APA, the parties executed a bill of sale, which provides, in

pertinent part:

> 1. <u>Sale and Assignment of Assets</u>. The Seller hereby sells, transfers,
> assigns, conveys and delivers to Purchaser, and its successors and assigns, and
> Purchaser hereby purchases, acquires and accepts from Seller, all of Seller's right,
> title and interest in, to and under the Assets, other than the portion of the Assets
> that constitute the Intangible Personal Property, the Land and the Improvements,
> free and clear of all liens (other than those created by Purchaser and attaching
> upon the consummation of the transfer of the Assets and other than otherwise
> expressly assumed by Purchaser pursuant to the Asset Purchase Agreement) and
> Excluded Liabilities.

[Doc. No. 1, at ¶ 13; Doc. No. 1-4, at 132]. Although capitalized, the term "Assets" was

not defined in the bill of sale. [*Id.*]. The bill of sale does provide that "capitalized terms

used but not defined herein have the respective meanings ascribed to them in the Asset

Purchase Agreement." [Doc. No. 1-4, at 132].

The Plaintiff contends that the disputed property falls within the definition of

Assets that were sold pursuant to the APA and bill of sale. [Doc. No. 1, at ¶ 14]. Thus,

the Plaintiff seeks a judgment that all assets of the debtor that were not otherwise

specifically excluded in the APA were sold via the bill of sale on June 16, 2014. [Doc.

No. 9, at 5].

In his answer, the Trustee argues for a different interpretation of this contractual language. He contends that, "as is customary in all asset purchase agreements, cash on hand and in banks and substantially similar assets were never contemplated by either the Debtor or Hardwick to be a part of the Asset Purchase Agreement." [Doc. No. 6, at ¶ 4]. He points out that the parties "failed to complete" the Excluded Assets schedule "even though it is clear that the parties . . . intended to exclude cash on hand and substantially similar assets." [*Id.* at ¶ 5]. The Trustee contends that the CD at issue "was never contemplated to be a part of the assets transferred by the Debtor to Hardwick" and that "[n]o reference was ever made to the certificate of deposit during the negotiations . . . nor was any transfer document ever executed which referred to the certificate of deposit." [*Id.* at ¶ 6].

The Trustee also raises in his answer the affirmative defenses of estoppel, failure of consideration, and laches. [*Id.* at ¶¶ 17-20]. Regarding estoppel, the Trustee contends that "Hardwick had full knowledge of the existence of the CD after closing," "knew of the Trustee's ongoing efforts to reduce it[,] and materially assisted the Trustee to do so." [*Id.* at ¶ 17]. The Trustee contends that Hardwick should be estopped from claiming ownership of the disputed property because it "never asserted a claim to the certificate of deposit at issue until well after the closing of the sale of the assets and after substantial reductions had been achieved from the state." [*Id.*]. The Trustee also contends that the doctrine of laches bars the Plaintiff's recovery for the same reason. [*Id.* at ¶ 20]. Finally, the Trustee contends that Hardwick failed to pay any consideration for the CD. [*Id.* at ¶ 19].

## IV.   Standard of Review

Federal Rule of Civil Procedure 12(c), made applicable to this adversary proceeding by

Federal Rule of Bankruptcy Procedure 7012(b), states that "[a]fter the pleadings are closed —

but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R.

Civ. P. 12(c). The court considers a motion under Rule 12(c) using the same standard as under

Rule 12(b)(6). *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017). "For

purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the

pleadings of the opposing party must be taken as true, and the motion may be granted only if the

moving party is nevertheless clearly entitled to judgment." *J.P. Morgan Chase Bank, N.A. v.

Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). All reasonable inferences are drawn in

favor of the non-moving party. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *3 (6th

Cir. June 2, 2000). However, the court "need not accept as true legal conclusions or unwarranted

factual inferences." *J.P. Morgan Chase Bank, N.A.*, 510 F.3d at 581-82 (quoting *Mixon v. Ohio,

193 F.3d 389, 400 (6th Cir. 1999)). A Rule 12(c) motion "is granted when no material issue of

fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan

v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991).

When considering a motion for judgment on the pleadings, the court generally may not

consider any facts outside the pleadings and any attached exhibits. *See Amini v. Oberlin College*,

259 F.3d 493, 502 (6th Cir. 2001). When matters outside the pleadings are considered, the court

should treat the motion as one for summary judgment. *See Filer v. Polston*, 886 F. Supp. 2d 790,

794 (S.D. Ohio 2012) (citing *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991)). The

Sixth Circuit has held in the context of a Rule 12(b)(6) motion that a court may consider the

complaint, exhibits attached to it, public records, items appearing in the record of the case, and

exhibits that were attached to a defendant's motion to dismiss, as long as such are referred to in

the complaint and are central to the claims contained therein. *Kreipke v. Wayne State Univ.*, 807

F.3d 768, 774 (6th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S.

308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Amini*, 259 F.3d at 502. The court may take

judicial notice of entries from its docket or another court's, although it may not credit disputable

facts therein as evidence. *See In re Omnicare Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014).

Doing so does not require the court to convert the pending motion into a motion for summary

judgment. *See Irons v. Maginnis (In re Irons)*, 572 B.R. 877, 881 n.1 (N.D. Ohio 2017).

For purposes of deciding this Rule 12(c) motion, the court has considered the motion

itself along with the Trustee's objection, the complaint and all exhibits attached thereto, the

answer, and the docket in both the debtor's bankruptcy case and this adversary proceeding. The

court has excluded from consideration the motion and affidavit filed by the Trustee to defer

consideration as well as the supplemental pleadings that were made in response to that motion.

[Doc. Nos. 12-14, 16-17].

V.   Analysis

This case requires the court to interpret the terms of the APA and bill of sale. Both

documents were executed in Tennessee and contain choice of law provisions selecting Tennessee

law as governing. [Doc. Nos. 1-4, at 28-29, 133]. Therefore, the court will look to Tennessee

contract law to interpret these documents. In Tennessee, the interpretation of written documents

is a matter of law. *See, e.g., Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "A

cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties."

*Id.* (citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). When ascertaining the

intent of the parties, the court looks first to the plain meaning of the words used in the contract to

determine whether the language is ambiguous. *Id.* (citing *Planters Gin Co. v. Fed. Compress &*

*Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)). Generally, language in a contract is

ambiguous when it is "susceptible to more than one reasonable interpretation." *Id.* If a contract is

ambiguous, then the court may consider parol evidence, including the contracting parties'

statements and conduct, to "guide the court in construing and enforcing the contract." *Id.* at 612

(citations omitted). Because the court is considering a Rule 12(c) motion and cannot consider

evidence outside of the pleadings, the Plaintiff's motion can only be granted if the APA and bill

of sale unambiguously support the Plaintiff's interpretation. *See Crossville, Inc. v. Kemper*

*Design Ctr.*, No. 2:09-0120, 2010 WL 2650731, at *3 (M.D. Tenn. July 2, 2010).

Having considered the APA and bill of sale,[3] the court concludes that the Plaintiff is not

entitled to a partial judgment on the pleadings. The court reaches this conclusion based on its

finding that the agreement is ambiguous and that the Trustee has raised affirmative defenses that

would preclude a judgment on the pleadings in this case. For the same reasons, the court also

will deny the Trustee's request in his objection to the Plaintiff's motion for a judgment on the

pleadings in his favor.

### 1. *Ambiguity*

First, the court finds that the APA and bill of sale are ambiguous as to whether the

disputed property was to be conveyed. Because the court finds the contract ambiguous, it cannot

grant the Plaintiff's Rule 12(c) motion. *See Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276,

280 (6th Cir. 1974) (jury must decide meaning of ambiguous term in contract); *see also Rock the*

*Ocean Prods., LLC v. Huka Prods., LLC*, No. 3-15-0410, 2017 WL 106673, at *2 (M.D. Tenn.

2017) (court did not grant Rule 12(c) motion where contract was susceptible to two different

interpretations). The court finds two material ambiguities relevant to the present dispute.

---

3 For purposes of interpreting the parties' agreement for this motion for partial judgment on the pleadings, the court
has limited its consideration to the final version of the agreement memorialized in the closing package attached to
the Plaintiff's complaint. [Doc. No. 1-4].

### A. *Paragraph 1.02(b) "Assets" and Section 2.05 "Excluded Assets"*

The Plaintiff seeks a ruling that the APA conveyed "all assets" owned by the debtor pursuant to Paragraph 1.02(b), which contains broad categories of property but expressly excludes any assets identified in Exhibit 2.05 as Excluded Assets. The Plaintiff argues that because no assets were listed in Exhibit 2.05, nothing was excluded from the sale and all assets as defined in Paragraph 1.02(b) were sold and thus belong to Plaintiff.

Paragraph 1.02(b) defines the term "Assets" broadly to include "all of the Debtor's assets of any nature whatsoever . . . ." [Doc. No. 1-4, at 7]. It also includes specific descriptions that could plausibly apply to the CD in question, such as "other deposits." [*Id.*]. The only assets that are not included are those defined as "Excluded Assets." [*Id.*].

Paragraph 1.02(h) defines Excluded Assets as those assets, "if any," which are provided in Section 2.05. [*Id.* at 8]. Section 2.05 then refers to an Exhibit 2.05 as containing the "Excluded Assets," which were not to be included in the sale. [*Id.* at 12]. Utility deposits set forth on Exhibit 2.05 were to be Excluded Assets. [*Id.*]. Section 2.05 also provides that, "[s]ubsequent to the Effective Date of this Agreement *until the Closing*, Purchaser and Seller *may* mutually agree to amend, modify, or supplement [Exhibit 2.05]."[4] [*Id.* (emphasis added)].

Exhibit 2.05 included in the closing package does not contain a list of items excluded or even the simple word "none." [Doc. No. 1-4, at 33]. Instead, the exhibit contains the following language: "The Parties agree to work together, in good faith, to finalize this exhibit as soon as practicable *after* the Effective Date." [*Id.* (emphasis added)].

The Plaintiff, relying on the language of Section 2.05, argues that the parties had only *until the closing* in which they *may* complete the Excluded Assets schedule. [Doc. No. 9, at 3].

---

4 The Effective Date of the APA is March 18, 2014. [Doc. No. 1-4, at 6].

Because the Excluded Assets schedule contains no itemized list of assets, the Plaintiff contends that all of the debtor's assets were conveyed. Although the court agrees with the Plaintiff that this is one reasonable interpretation of the agreement, the court is not persuaded that it is the only reasonable interpretation of the agreement.

Treating the Trustee's well-pleaded material allegations as true and giving the Trustee all reasonable inferences, the APA contains obvious ambiguities regarding which assets were to be excluded and when the parties were to finalize the Excluded Assets exhibit. First, the Excluded Assets exhibit does not identify any assets, even though utility deposits were expressly to be excluded based on Section 2.05. [Doc. No. 1-4, at 12, 33]. Thus, the Excluded Assets exhibit creates an ambiguity with regard to the utility deposits. Although the utility deposits are not at issue in this case, their absence from the Excluded Assets exhibit when they were apparently intended to be excluded, raises the inference that the Excluded Assets exhibit is incomplete.

Second, despite the provision in Section 2.05 that the parties "may mutually agree to amend, modify, or supplement" Exhibit 2.05 "[s]ubsequent to the Effective Date . . . *until the Closing*," Exhibit 2.05 itself provides that the parties would work to finalize the exhibit "as soon as practicable *after the Effective Date*." [Doc. No. 1-4, at 12, 33 (emphasis added)]. The agreement thus contains two different timelines for supplementing the Excluded Assets exhibit, one with a deadline at closing, and one without a specific deadline. The parties never supplemented Exhibit 2.05. The Plaintiff contends that this is because there were no Excluded Assets. [Doc. No. 1, at ¶ 6]. However, based on the Trustee's answer, it is reasonable for the court to infer that the parties never reached a final meeting of the minds regarding which assets were to be excluded from the sale. The court simply cannot determine from this language whether the disputed property in this case was clearly meant to be excluded from the sale or not.

13

### B. *Paragraph 2.01*

The court also finds ambiguity when considering Paragraph 2.01 of the APA, which the

Plaintiff does not specifically address in its complaint or motion for partial judgment on the

pleadings.[5] [Doc. No. 1-4, at 12]. That section provides as follows:

> **2.01 Agreement to Sell and Purchase.** In consideration of the mutual
> covenants and promises contained in this Agreement, and subject to the approval
> of the Bankruptcy Court to be set forth in the Sale Order (as hereinafter defined),
> Seller agrees to sell, assign, transfer, and convey unto Purchaser the Assets, and
> Purchaser agrees to purchase all of Seller's right, title, and interest in and to the
> Assets, upon the terms and conditions set forth herein, such Assets being more
> particularly described on **Exhibit 2.01** attached hereto. Subsequent to the
> Effective Date of this Agreement until the Closing, Purchaser and Seller may
> mutually agree to amend, modify, or supplement such exhibit.

[*Id.* (emphasis in original)].

Attached to the APA are two versions of Exhibit 2.01. The first version of Exhibit 2.01,

titled "List of Assets," contains the language that "[t]he Parties agree to work together, in good

faith, to finalize this exhibit as soon as practicable after the Effective Date." [*Id.* at 32]. As

discussed above, this language raises the reasonable inference that the parties had not agreed to

the final list of assets to be sold and intended to supplement the exhibit. However, a second

version of Exhibit 2.01 is also attached to the APA. [*Id.* at 41]. It is titled "Exhibit 2.01 to Asset

Purchase Agreement (Updated as of June 16, 2014)." [*Id.*]. It contains over eighty pages of

itemized assets, including accounts receivable and raw goods, work in process, and finished

goods inventory. [*Id.* at 41-164]. This itemized list of assets does not include a schedule for cash

on hand, bank accounts, or bank deposits. Nor does it list the CD at issue.

---

5 Paragraph 2.01 is found in the APA, which was attached as an exhibit to the complaint, and is, therefore, properly
under the court's consideration for this Rule 12(c) motion.

14

Paragraph 2.01 and its two attached exhibits are ambiguous. The court cannot determine

whether the parties were to work in good faith to finalize the list of assets after the Effective Date

or whether the list of assets to be sold was as specified in the second version of Exhibit 2.01.

To the extent that the second, more detailed list of assets is operative, that list does not

contain the disputed property. In contract interpretation, particular and specific provisions

control over general provisions. *See Lamar Adver. Co. v. Big Pass Partners*, 313 S.W.3d 779,

794-95 (Tenn. Ct. App. 2009) (citations omitted) (specific assets listed in APA controlled over

general provisions). The court cannot determine based on the four corners of the APA which

version of Exhibit 2.01 is controlling. However, if the court were to find that the second, detailed

exhibit controls, it would be hard pressed to find that assets that were not on that exhibit were

conveyed.

Finally, the proviso in Paragraph 2.01 that the assets being sold were those described in

Exhibit 2.01 creates some ambiguity when read in concert with Paragraph 1.02(b)'s recitation

that the term Assets means broadly "all…assets" except those defined as Excluded Assets. [Doc.

No. 1-4, at 7, 12]. Paragraph 2.01 apparently provides an additional limitation on which assets

were to be sold that is not contemplated by Paragraph 1.02(b).

In his objection, the Trustee has argued that the agreement is in fact not ambiguous and

favors his interpretation. [Doc. No. 23, at 13]. However, for the reasons set forth above, the court

concludes that the agreement is ambiguous, and to the extent that the Plaintiff seeks judgment on

the pleadings in his favor, the court denies such a request.

### 2. *Affirmative Defenses*

The court also finds that the Plaintiff's motion for partial judgment on the pleadings

should be denied based on the Trustee's pleading of affirmative defenses requiring factual

development. In his answer, the Trustee pleads the affirmative defenses of estoppel, failure of

consideration, and laches. [Doc. No. 6, at ¶¶ 17-20].

A Rule 12(c) motion will only be granted when: (1) the admissions in the defendant's

answer entitle the plaintiff to judgment as a matter of law; and (2) the defendant's affirmative

defenses do not require factual development. *Medicus Ins. Co. v. Erx Grp., LLC*, No. 3:15-CV-

205-CCS, 2016 WL 3982470, at *3 (E.D. Tenn. July 22, 2016) (citing *Founders Ins. Co. v.

Bentley Entm't, LLC*, No. 3:12–cv–1315, 2013 WL 3776311, at *8 (M.D. Tenn. July 17, 2013));

*see also Lee v. Robinson, Raegan & Young, PLLC*, No. 3:14-CV-0748, 2015 WL 328323, at *1

(M.D. Tenn. Jan. 26, 2015). "A plaintiff is not entitled to judgment on the pleadings if the

defendant's answer raises issues of fact or an affirmative defense, which, if proved, would defeat

plaintiff's recovery." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004)

(citing *Qwest Commc'ns Corp. v. City of Berkeley,* 208 F.R.D. 288, 291 (N.D. Cal. 2002)).

Based in part on the court's conclusion that the APA is ambiguous, opening the door to

the introduction of parol evidence, the court also finds that the Trustee's affirmative defenses

require factual development and, if proved, would defeat the Plaintiff's recovery. At least one of

the defenses, failure of consideration, goes directly to the formation of the agreement and

whether the parties ever had a meeting of the minds regarding which assets were to be sold. The

defenses of estoppel and laches may also speak to the Plaintiff's understanding of the agreement

after closing, which bears on its intention at the time the agreement was consummated.

The Plaintiff argues that the Trustee failed to properly plead estoppel by not making an

allegation of any dishonest or misleading act and failed to properly plead laches by not making

an allegation of detriment caused by the Plaintiff's delay. [Doc. No. 10, at 7 (citing *Duke v.

Hopper*, 486 S.W.2d 744, 748 (Tenn. Ct. App. 1972); *Dennis Joslin Co., LLC*, *v. Johnson*, 138

16

S.W.3d 197, 200 (Tenn. Ct. App. 2003))]. However, regarding laches and estoppel specifically, the Trustee alleges in his answer that the Plaintiff had specific knowledge of the existence of the CD after closing and knew that the Trustee was administering it for the benefit of the chapter 7 estate. [Doc. No. 6, at ¶ 17]. The answer also alleges that the Plaintiff assisted the Trustee in doing so, yet delayed filing suit for over three years after the closing. [*Id.* at ¶¶ 17-18, 20] The court may infer that the Plaintiff's assistance with obtaining a recovery for the estate was misleading based on the Plaintiff's position that any recovery was for its benefit. The answer also alleges that the Trustee has obtained substantial reductions in the CD. [*Id.* at ¶ 17]. The court may infer damages in the form of costs and expenses to the estate. Accepting these allegations as true for the purposes of this motion, the court must conclude that the answer sufficiently pleads the affirmative defenses of estoppel and laches. The Plaintiff has made no argument regarding the Trustee's contention that the Plaintiff failed to pay any consideration for the CD.

Based on the Trustee's pleading of affirmative defenses which would, if proved, defeat the Plaintiff's complaint, the court concludes that partial judgment on the pleadings is not appropriate.

## VI.    Conclusion

For the reasons explained above, the court will DENY the Plaintiff's motion for partial judgment on the pleadings. [Doc. No. 9]. Based on the court's prior order deferring consideration of the Plaintiff's request for partial summary judgment under Federal Rule of Civil Procedure 56(a) pending the close of discovery [Doc. No. 18], the court will allow the Plaintiff to renew its Rule 56 motion at the appropriate time, if desired, by filing a new pleading.

A separate order will enter.

# # #