**SIGNED this 17th day of May, 2019**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE

In re:

        No.  1:13-bk-16079-SDR
        Chapter 7

HC LIQUIDATION, INC.,

        Debtor,

HARDWICK CLOTHES, INC.,

        Plaintiff,

v.

        Adversary Proceeding
        No.  1:18-ap-1005-SDR

RICHARD P. JAHN, JR., TRUSTEE,

        Defendant.

## MEMORANDUM OPINION

I.     Summary

On January 18, 2018, Hardwick Clothes, Inc. ("Plaintiff" or "Hardwick") filed a complaint

in this adversary proceeding against Richard P. Jahn, Jr., chapter 7 trustee of the debtor's

bankruptcy estate ("Trustee" or "Defendant"). [Doc. No. 1].[1] The complaint was amended on November 9, 2018. [Doc. No. 44]. The controversy between the parties stems from an asset purchase agreement ("APA") and bill of sale (together the "agreement") entered into between the Plaintiff's predecessor in interest, Jones CapitalCorp, LLC, and the debtor. [*Id.* at 1-2, 5-6]. This court approved the sale on June 6, 2014. [*Id.* at 2]. The Plaintiff seeks a declaratory judgment by the court that certain assets were sold pursuant to the terms of the agreement. [Doc. No. 57, at 2]. The Plaintiff has identified $334,537.56 in "disputed property," which it alleges the Trustee has exercised control over in contravention of the agreement. [Doc. No. 44, at ¶ 15; Doc. No. 56, at ¶ 12].

The Trustee filed an answer to the amended complaint on December 3, 2018. [Doc. No. 52]. In his answer, the Trustee generally does not contest the language of the agreement as stated in the complaint. [*Id.* at 1-4]. However, he argues that the language is subject to a different interpretation than that put forth by the Plaintiff. [*Id.*]. He also contests the Plaintiff's characterization of certain exhibits and whether those exhibits were part of the agreement approved by the court. [*Id.*]. The Trustee argues that the parties to the agreement did not intend for the disputed property to be included in the sale of assets and that he has properly exercised control over the disputed property. [*Id.* at 3-6]. The Trustee also raises the affirmative defenses of estoppel, failure of consideration, and laches. [*Id.* at 6-7].

On June 12, 2018, the court entered an order and memorandum opinion denying a motion filed by the Plaintiff for partial judgment on the pleadings or, in the alternative, for partial summary judgment. [Doc. Nos. 27-28]. In reaching this conclusion, the court found that the APA and bill of

---

1 All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 1:18-ap-1005-SDR, unless otherwise noted.

sale were ambiguous as to whether the disputed property was intended to be conveyed. [Doc. No. 27, at 11]. The court also found that the Trustee's pleading of affirmative defenses required factual development precluding judgment on the pleadings. [Doc. No. 27, at 15-17]. The court deferred consideration of the Plaintiff's request for partial summary judgment pending the close of discovery. [*Id.* at 17].

On April 5, 2019, the Plaintiff filed a motion and amended motion for partial summary judgment, to which the Trustee has objected. [Doc. Nos. 54, 57-58]. The Plaintiff's amended motion seeks a summary judgment "that all of the assets of the Debtor, except certain Excluded Assets, were sold to Hardwick Clothes, Inc., via a Bill of Sale signed June 16, 2014." [Doc. No. 57, at 2]. The Plaintiff argues that the disputed property was not excluded from the APA and that the merger doctrine applies to the transfer via the bill of sale. [Doc. No. 55, at 4]. In support of its motion for summary judgment, the Plaintiff points to evidence indicating that all parties to the agreement concur that an updated list of assets to be conveyed was "inadvertently" attached to the final APA as Exhibit 2.01, when in fact it was intended to merely supplement a prior version of Exhibit 2.01 that had been filed with the court. [*Id.*]. The Plaintiff also points to evidence that all of the parties to the agreement concur that all of the assets set forth in the prior version of Exhibit 2.01, as supplemented, were in fact purchased by the Plaintiff, thus "revolving any ambiguity regarding the purchase documents." [*Id.*]. In seeking only a partial judgment, the Plaintiff asks that the court reserve ruling on any issues related to: (1) what assets were in existence on June 16, 2014; and (2) the reasonable and necessary costs and expenses incurred by the Trustee in collecting and preserving the disputed property. [Doc. No. 55, at 9].

The Trustee has objected, arguing that the court "has previously found as a matter of law that the documents in issue are ambiguous in multiple ways" and that "the Trustee has validly

asserted the defenses of estoppel, laches, and failure of consideration." [Doc. No. 58, at 4-5]. The Trustee argues that the new facts presented by the Plaintiff on summary judgment, namely that "the original Exhibit 2.01 should be considered to be attached at closing, add[] nothing to what the Court has already considered." [*Id.* at 5]. The Trustee argues that the affidavits filed by the men who negotiated the agreement are contradicted by the fact that "[a]fter the sale the parties acted consistently with the fact that the [disputed property] was never conveyed." [*Id.* at 4]. In support of his position, the Trustee points to actions taken after the sale by Carmin Chastain, the Chief Financial Officer ("CFO") of the Plaintiff, to aid the Trustee in liquidating the disputed property. [*Id.* at 5-9]. The Trustee also points to the deposition testimony of Robert Belcher, C.P.A., who prepared the Plaintiff's financial statements but did not include the disputed property as an asset of the Plaintiff's following the sale. [*Id.* at 9-11].

The Plaintiff's motion for summary judgment is now ripe for the court's consideration. For the reasons explained below, the court concludes that the Plaintiff's motion should be denied. To the extent that the Trustee's objection seeks summary judgment in his favor, the court concludes that such a request also should be denied for the same reasons.

## II.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district, provide this court with jurisdiction to hear and decide this adversary proceeding.  The parties agree that the Plaintiff's action is a core proceeding and consent to this court's entry of judgment. [Doc. No. 44, at 1; Doc. No. 52, at 1]; s*ee* 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(O).

## III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to show

conclusively that no genuine dispute of material fact exists, and the court must view the facts and

all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*,

105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th

Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the

nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party

is required to come forward with some significant probative evidence which makes it necessary to

resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *60 Ivy*

*Street Corp.*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the

nonmoving party fails to make a sufficient showing on an essential element of the nonmoving

party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S.

at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

## IV.    Facts

The central dispute in this case is over which assets were conveyed by the agreement. The

Plaintiff has identified $334,537.56 in what it terms "disputed property" that it purchased from the

debtor, yet over which it alleges the Trustee has improperly exercised control. [Doc. No. 56, at ¶¶

11-12]. The Plaintiff seeks a declaratory judgment that this disputed property is the Plaintiff's

property and requests that the court order the Trustee to return the property to the Plaintiff. [Doc.

No. 44, at 6]. The Trustee contends that the disputed property was not conveyed and was never

intended to be conveyed by the parties' agreement.

On March 19, 2014, the debtor filed a motion for authorization to sell substantially all of

its estate's assets to Jones CapitalCorp, LLC ("Sales Motion"). [Doc. No. 56, at ¶ 2]. The Plaintiff

is the successor in interest to Jones CapitalCorp, LLC. [*Id.* at ¶ 1]. By filing this Sales Motion, the

debtor sought to have the court approve the APA by which it sold assets to the Plaintiff. The APA

was attached to the motion. [*Id.* at ¶ 2].

The APA contains the following language in Paragraph 1.02(b) defining "Assets":

**"Assets"** shall mean, collectively, all of the Debtor's assets of any nature
whatsoever, real, personal or mixed, known or unknown including, but not limited
to the fee interest in the Land and Improvements, Accounts Receivable, Equipment,
Inventory, Supplies, Intellectual Property, all of Seller's memorabilia, historical
artifacts, historic samples, historic clothing, archives, relics, keepsakes, souvenirs,
pictures, books, accounting records, newspaper articles, Intangible Personal
Property, Records, Assumed Contracts, pre-paid assets, refunds, unclaimed funds,
customer and other deposits, including utility deposits, and other intangible and
tangible assets, whether real, personal, or mixed, which are located upon the Land
or owned and held for the use by Seller in connection with the Business but
excluding the Excluded Assets in all cases.

[Case No. 1:13-bk-16079-SDR, at Doc. No. 100-1, at 6].

Section 2.01 of the APA set forth the assets to be sold:

**Agreement to Sell and Purchase.** In consideration of the mutual covenants and
promises contained in this Agreement, and subject to the approval of the
Bankruptcy Court to be set forth in the Sale Order (as hereinafter defined), Seller
agrees to sell, assign, transfer, and convey until Purchaser the Assets, and Purchaser
agrees to purchase all of Seller's right, title, and interest in and to the Assets, upon
the terms and conditions set forth herein, *such Assets being more particularly
described on Exhibit 2.01 attached hereto. Subsequent to the Effective Date of this
Agreement until the Closing, Purchaser and Seller may mutually agree to amend,
modify, or supplement such exhibit.*

[*Id.* at 11 (emphasis added)].

Rather than a list of assets, the version of Exhibit 2.01 that was attached to the APA filed

with the Sales Motion simply states that, "[t]he Parties agree to work together, in good faith, to

finalize this exhibit as soon as practicable after the Effective Date" ("March 19 Exhibit 2.01").

[Doc. No. 56, at ¶ 2; Case No. 1:13-bk-16079-SDR, Doc. No. 100-1, at 31]. Numerous other

exhibits in the APA attached to the Sales Motion contain the same language rather than itemized

lists. [*See* Case No. 1:13-bk-16079-SDR, Doc. No. 100-1, at 32-39].

Paragraph 1.02(h) of the APA defines which assets were excluded from the sale:

**"Excluded Assets"** shall mean those items mutually identified and agreed to
by the Parties hereto in writing, *IF ANY,* as provided in Section 2.05 of this
Agreement.

[Doc. No. 56, at ¶ 7; Case No. 1:13-bk-16079-SDR, Doc. No. 100-1, at 7 (emphasis added)].

Section 2.05 of the APA addresses "Excluded Assets" and provides as follows:

<u>**Excluded Assets.**</u> In entering into this Agreement, Purchaser shall not acquire, as
a result of the Transaction set forth herein, any interest in any of the Excluded
Assets, such Excluded Assets described more particularly on Exhibit 2.05 to this
Agreement, including without limitation the rights relating to certain utility
deposits set forth on Exhibit 2.05, and specifically disclaims any interests
whatsoever therein. Subsequent to the Effective Date of this Agreement until the
Closing, Purchaser and Seller *may* mutually agree to amend, modify, or supplement
such exhibit.

[Doc. No. 56, at ¶ 8; Case No. 1:13-bk-16079-SDR, Doc. No. 11-1, at 11 (emphasis added)].

Paragraph 1.03 of the APA, titled "General Construction," provides that, "[t]he word

'including' means 'including without limitation.'" [Doc. No. 56 at ¶ 9].

Section 2.05 refers to an Exhibit 2.05, which was to be a list of the assets excluded from

the transaction.[2] [*Id.* at ¶ 7]. However, Exhibit 2.05 attached to the Sales Motion does not contain

a list of assets. Rather, like the March 19 Exhibit 2.01, Exhibit 2.05 simply states that, "[t]he Parties

agree to work together, in good faith, to finalize this exhibit as soon as practicable *after* the

Effective Date." [Case No. 1:13-bk-16079-SDR, Doc. No. 100-1, at 32]. Exhibit 2.05 was never

updated to add excluded assets and was not filled out at closing on June 16, 2014. [Doc. No. 65,

---

2 The Trustee disputes that Paragraph 1.02(h) and Exhibit 2.05 were "the only place[s] that dealt with excluded assets"
in the APA. [Doc. No. 60, at ¶ 7]. He points out that Paragraph 2.05 describes utility deposits as being excluded yet
Exhibit 2.01 includes them as being conveyed. [*Id.*]. The parties agree that utility deposits were not in fact conveyed.
[*Id.*; Doc. No. 55, at 6]. The Trustee also points out that the debtor "did not convey its cash of over $300,000," yet
cash "was never listed in Exhibit 2.05." [*Id.*]. These omissions lead the Trustee to argue that "what the term 'Excluded
Assets' was really meant to be and what list was to be put into Exhibit 2.05 in this transaction is ambiguous." [*Id.*].

at ¶ 2]. The parties dispute whether the fact that Exhibit 2.05 was never updated to add an itemized list of excluded assets was intentional. The Plaintiff contends that, "the failure to add assets to Exhibit 2.05 was not an act of omission," implying that there were no additional assets to be excluded by Exhibit 2.05. [Doc. No. 55, at 5]. The Trustee disputes the Plaintiff's conclusion that "a blank [Exhibit] 2.05 should mean that no assets were to be excluded" and contends that "what list was to be put into Exhibit 2.05 in this transaction is ambiguous." [Doc. No. 60, at ¶¶ 7-8].

Section 7.07 of the Asset Purchase Agreement states:

**Accounts Receivable.** Prior to the Closing, the Parties agree to establish, in consultation with any provider of post-Petition Date financing to Seller, certain post-Closing procedures to allow for the billing and collection of all Accounts Receivable to assure that all amounts owed arising from services provided shall be paid to Purchaser, such Accounts Receivable being among the Assets being transferred by Seller to Purchaser under the Transaction contemplated by this Agreement.

[Doc. No. 56, at ¶ 13].

On April 16, 2014, the debtor filed a new version of Exhibit 2.01 on the court's docket ("April 16 Exhibit 2.01"). [*Id.* at ¶ 4; Case No. 1:13-bk-16079-SDR, Doc. No. 124]. This Exhibit 2.01, which is 47 pages long, contains a list of assets including *inter alia* land, accounts receivable, furniture and fixtures, computer equipment, machinery, inventory, deposits and prepaid assets, life insurance policies, intellectual property, and clothing patterns and designs. [Doc. No. 65, at ¶6; Case No. 1:13-bk-16079-SDR, Doc. No. 124].[3] The very last paragraph of the April 16 Exhibit 2.01 states, "Any and all Other Assets of any nature, known or unknown, whether or not set forth above not otherwise excluded as set forth on Exhibit 2.05." [Doc. No. 56, at ¶ 6; Case No. 1:13-

---

3 The Plaintiff disputes this fact as stated in the Trustee's statement of undisputed facts. [Doc. No. 65, at ¶ 6]. The Trustee's statement refers to an "Original Schedule 2.01," and cites to Doc. No. 124, which the court has identified as the "April 16 Exhibit 2.01." [Doc. No. 60, at ¶ 6]. The Plaintiff's denial states that "[t]he original version of Exhibit 2.01 attached to Docket entry 100 is blank." It appears that the Plaintiff's dispute is with the Trustee's characterization of the April 16 Exhibit 2.01 as the "original," rather than with the list of the itemized categories. The court has independently reviewed the April 16 Exhibit 2.01 and finds the fact that it includes this list of assets to be undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c), (e).

bk-16079-SDR, Doc. No. 124, at 47]. This paragraph is found under the category of assets titled "Clothing Patterns and Designs."[4] [Doc. No. 61, at ¶ 7]. No other category of asset in the April 16 Exhibit 2.01 contains a similar catchall provision.[5] [*Id.* at ¶ 8].

On June 6, 2014, the court conducted the final hearing and approved the APA filed with the Sales Motion. The APA was approved by the court by order entered June 6, 2014. [Case No. 1:13-bk-16079-SDR, Doc. No. 153].

The Plaintiff contends that when the court approved the APA on June 6, it also approved the April 16 Exhibit 2.01 filed at Doc. No. 124. [Doc. No. 56, at ¶ 5]. The Plaintiff thus argues that the "catch-all" paragraph at the end of Exhibit 2.01 is effective and operates to include all of the debtor's assets in the sale, including the disputed property over which the Trustee has exerted control. The Trustee disputes this characterization, arguing that the court only approved the APA and not its exhibits. [Doc. No. 60, at ¶¶ 5-6]. The Trustee notes that many of the exhibits were not completed at the time the court approved the APA, that all exhibits were subject to revision at any time, and that some were never completed. [*Id.*].

A bill of sale was executed to consummate the transfer on June 16, 2014.[6] [Doc. No. 56, at ¶ 14]. The bill of sale provides in pertinent part:

> Whereas, capitalized terms used but not defined herein have the respective meanings ascribed to them in the Asset Purchase Agreement.
>
> 1. Sale and Assignment of Assets. The Seller hereby sells, transfers, assigns, conveys and delivers to Purchaser, and its successors and assigns, and

---

4 The Plaintiff disputes this fact as stated in the Trustee's statement of undisputed facts. [Doc. No. 65, at ¶ 7]. However, here again, the court notes that the Plaintiff's dispute appears to be with the Trustee's characterization of the April 16 Exhibit 2.01 as the "original Schedule 2.01," rather than the substance of the statement. *See supra* n.3. For this reason, the court has treated this fact as undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c), (e).

5 The Plaintiff disputes this fact as stated in the Trustee's statement of undisputed facts. [Doc. No. 65, at ¶ 8]. For the same reasons as stated *supra* in footnotes 3 and 4, the court has treated this fact as undisputed for purposes of summary judgment.

6 The court notes that while the complaint states that the bill of sale was executed at the time the court approved the sale, which was June 6, 2014 [Doc. No. 44, at ¶ 17], the bill of sale included in the closing documents attached to the complaint is dated June 16, 2014. [Doc. No. 44-1, at 414].

> Purchaser hereby purchases, acquires and accepts from Seller, all of Seller's right, title and interest in, to and under the Assets, other than the portion of the Assets that constitute the Intangible Personal Property, the Land and the Improvements, free and clear of all liens (other than those created by Purchaser and attaching upon the consummation of the transfer of the Assets and other than otherwise expressly assumed by Purchaser pursuant to the Asset Purchase Agreement) and Excluded Liabilities.

[*Id.*]. Although capitalized, the term "Assets" was not defined in the bill of sale. [*Id.*].

The "Closing Package" filed with the amended complaint in this case contains yet another version of Exhibit 2.01, which indicates that it was "Updated as of June 16, 2014" ("June 16 Exhibit 2.01"). [Doc. No. 44-1, at 41]. The June 16 Exhibit 2.01 contains an itemized list of accounts receivable and inventory. [*Id.* at 41-125; Doc. No. 61, at ¶ 3; Doc. No. 65, at ¶ 3]. Critically, however, it does not contain the "catch-all" paragraph contained in the April 16 Exhibit 2.01. The April 16 Exhibit 2.01 was not attached to the APA at closing. [Doc. No. 61, at ¶ 1].

By way of explanation, the Plaintiff has attached the affidavits of William P. Aiken, an attorney who represented the debtor at the time of the sale, Thomas Hopper, the President of the debtor at the time of the sale, and Joe Mason, a Senior Vice President and the CFO of Jones CapitalCorp, LLC, who was involved in the negotiations related to the sale. [Doc. No. 56, Ex. 5-7, at 185-193]. These affidavits generally relate that:

> The version of Exhibit 2.01 attached to the [APA] in the Closing Package . . . and filed as Docket Entry # 124 was compiled from a series of spreadsheets prepared by Carmin Chastain, an employee of the [d]ebtor at the time she prepared same. It was meant to be a *supplement* to the filed Exhibit 2.01, not a replacement. The Closing Package Exhibit 2.01 contains only accounts receivable and inventory, the only assets the composition of which changed after the preparation of Filed Exhibit 2.01. Through a clerical error, the Closing Package Exhibit 2.01 was erroneously substituted for the Filed Exhibit 2.01.

[*Id.* at ¶ 10 (emphasis in original)].

In other words, the Plaintiff contends that, "[i]t was the intention of the parties to the transaction in dispute that the assets set forth in [the April 16] Exhibit 2.01 were to be

10

supplemented by the [June 16] Exhibit 2.01, and those exhibits together were to be the assets purchased by the Plaintiff." [*Id.* at ¶ 15]. The parties agree that the Trustee was not a party to the APA but is merely a successor in interest to the debtor and has no personal knowledge of the negotiations which led to the final APA. [*Id.* at ¶ 17]. The Plaintiff contends that, "[n]o one other than the Trustee has ever taken the position that the only assets purchased are those set forth on the [June 16] Exhibit 2.01." [*Id.* at ¶ 15]. In further support of its view of the intention of the parties to the agreement, the Plaintiff notes that, "the Trustee has never asked for possession of the many assets on the [April 16] Exhibit 2.01 not listed in the [June 16] Exhibit 2.01." [Doc. No. 56, at ¶ 16].

The Trustee admits that "all assets that were specifically itemized on *both* [the April 16 and June 16] Exhibits 2.01, with the exception of utility deposits, were intended to be conveyed." [Doc. No. 60, at ¶ 10 (emphasis added)]. However, the Trustee disputes that the "catch-all" paragraph at the end of the April 16 Exhibit 2.01 would operate to convey any assets not listed.[7] [*Id.*]. The Trustee argues that the court did not approve Exhibit 2.01 in its June 6, 2014 order because it was either incomplete at that time or subject to revision. [*Id.* at ¶¶ 5-6]. The Trustee also argues that the "catch-all" paragraph would still be subject to the excluded assets list in Exhibit 2.05, which he contends was never completed. [*Id.* at ¶10].

The Trustee has also put forth a statement of undisputed facts to which the Plaintiff filed a response. [Doc. Nos. 61, 65]. In addition to the facts set out above, the Trustee supplements the following facts.

---

7 The Trustee admits that the "catch-all" paragraph may have conveyed assets in the category of Clothing Patterns and Designs [Doc. No. 60, at ¶ 10]; however, none of those assets are in dispute.

At closing on June 16, 2014, the debtor had over $300,000 in its bank account that was not turned over to the Plaintiff. [Doc. No. 61, at ¶ 9]. The Trustee contends that, "Cash in banks and utility deposits were intended to be excluded from the sale, but they were not listed as excluded assets on Exhibit 2.05 to the APA at closing." [*Id.* at ¶ 10]. The Plaintiff objects to this characterization, stating that, "Section 2.05 of the [APA] outlines what was intended to be excluded." [Doc. No. 65, at ¶ 10].

Part of the disputed property in this case is a $325,000 certificate of deposit ("CD") owned by the debtor that was pledged to the State of Tennessee for possible worker's compensation claims that might arise stemming from the debtor's self-insurance program that ended in 2011. [Doc. No. 61, at ¶¶ 11-12]. As part of the sale order, the Plaintiff was expressly relieved of any worker's compensation liability incurred by the debtor. [*Id.* at ¶ 33]. The Plaintiff was aware of this CD prior to the closing; however, the CD was not listed on the June 16 Exhibit 2.01 used at closing, nor was it listed on the April 16 Exhibit 2.01. [*Id.* at ¶¶ 13-14]. The CD matured at First Tennessee Bank on August 15, 2014, and was not renewed or liquidated by the Plaintiff at that time. [*Id.* at ¶ 15].

The Plaintiff has not listed the CD as an asset on its audited financial statements going back to December 31, 2014. [*Id.* at ¶ 27]. The Trustee contends that the CD was not listed on the Plaintiff's financial statements because an auditor of the Plaintiff's, Mr. Belcher, did not consider it to be the Plaintiff's asset. [*Id.* at ¶ 28]. The Plaintiff disputes this conclusion, contending that "[t]he reason the [CD] is not listed on the [Plaintiff's] Financial Statments [*sic*] is not because of Belcher's review or consideration." [Doc. No. 65, at ¶ 28].

In December 2014, the Trustee was told by Ms. Chastain, the CFO of the Plaintiff, that the CD had not been conveyed to the Plaintiff in the sale.[8] [Doc. No. 61, at ¶ 17]. The Trustee received $485,695.41 from the debtor's accounts on December 5, 2014, consisting of cash left from the bank account at closing and remaining closing proceeds. [*Id.* at ¶ 18]. Ms. Chastain provided information to the Trustee for the next eighteen months to enable him to get two reductions in the CD from the state's pledge. [*Id.* at ¶ 19].

The Trustee got reductions from the state of $100,000 (October 2016) and $75,000 (June 2017), and these funds were deposited into the Chapter 7 account.[9] [*Id.* at ¶ 20]. The Trustee listed the CD as an asset of the chapter 7 estate at the beginning of his administration of the case. [*Id.* at ¶ 21]. The Trustee took possession of the CD and titled it in his name after the initial reduction from the state was achieved. [*Id.* at ¶ 22]. The Plaintiff did not notify the Trustee of any dispute to the funds in the CD until September 2017. [*Id.* at ¶ 23]. The Trustee made an interim distribution to creditors of $500,000 in February 2017, part of which funds came from CD reductions. [*Id.* at ¶ 24]. The CD is presently titled in the Trustee's name in the amount of $150,398.32, maturing July 27, 2021. [*Id.* at ¶ 25]. The CD is still pledged to the State of Tennessee. [*Id.* at ¶ 26].

The Trustee has funds in the estate of approximately $211,000 plus the CD. [*Id.* at ¶ 34]. The Trustee contends that, "[i]f the Plaintiff is entitled to $325,000 from the estate

---

8 As support for this statement of fact, the Trustee cites his own declaration as well as the "Declaration of Chastain." [Doc. No. 61, at ¶ 17]. In its response to the Trustee's statement, the Plaintiff denies this fact but states only that "[t]here is no declaration of Chastain" in the record. [Doc. No. 65, at ¶ 17]. The Trustee's citation refers to Ms. Chastain's October 8, 2018 deposition, rather than a "declaration." The Plaintiff does not dispute the Trustee's declaration or Ms. Chastain's deposition testimony. Because the Plaintiff has not indicated that it genuinely disputes this fact and has not argued that the fact cannot be supported by admissible evidence, the court will treat the fact as undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c), (e).

9 The court notes a discrepancy in the record. The Trustee's statement of undisputed facts states that the $100,000 reduction was in October 2018 [Doc. No. 61, at ¶ 20], but the Trustee's affidavit states that the reduction came in October 2016. [Doc. No. 59, at ¶ 7]. For purposes of this opinion, the court has used the statement made in the Trustee's affidavit.

for this CD, after deducting for unpaid expenses of administration, there would be no or insufficient funds left for the state's lien to attach. [*Id.* at ¶ 35]. The Plaintiff does not deny this statement but contends that the state's lien "would stay attached to the CD as a matter of law." [Doc. No. 65, at ¶ 35].

## V.    Analysis

The Plaintiff's motion for summary judgment asks this court to determine that it purchased all of the assets of the debtor except for certain excluded assets via the bill of sale signed June 16, 2014. [Doc. No. 57, at 1]. In order to do so at the summary judgment stage, the court must determine that no genuine dispute of material facts exists and that, viewing the facts and inferences in the light most favorable to the Trustee, the bill of sale conveys the disputed property to the Plaintiff. In order to meet this standard, the Plaintiff must show either that the bill of sale unambiguously conveys the disputed property to the Plaintiff or that any ambiguities have been resolved without creating a genuine dispute of material fact.

As the court noted in its prior opinion, this case requires the court to interpret the terms of the bill of sale. Because the bill of sale uses capitalized terms whose definitions are contained in the APA, the court must also consider the APA, including its multiple exhibits, amended exhibits, and supplements in order to ascertain the parties' intent. Both the APA and bill of sale were executed in Tennessee and contain choice of law provisions selecting Tennessee law as governing. [Doc. Nos. 44-1, at 272, 377]. Therefore, the court will look to Tennessee contract law to interpret these documents. In Tennessee, the interpretation of written documents is a matter of law. *See, e.g., Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Id.* (citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). When ascertaining the intent of the parties, the court looks first to the plain meaning of the words used in the contract to determine whether the

language is ambiguous. *Id.* (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)). Generally, language in a contract is ambiguous when it is "susceptible to more than one reasonable interpretation." *Id.* If a contract is ambiguous, then the court may consider parol evidence, including the contracting parties' statements and conduct, to "guide the court in construing and enforcing the contract." *Id.* at 612 (citations omitted).

In its prior opinion, the court identified several ambiguities within the APA, its exhibits and their amendments, and the bill of sale relevant to the issue of whether the parties intended for the disputed property to be conveyed. First, the court observed that the Excluded Assets exhibit, Exhibit 2.05, is blank and "does not identify any assets, even though utility deposits were expressly to be excluded based on Section 2.05." *Hardwick Clothes, Inc. v. Jahn (In re HC Liquidation, Inc.)*, No. 1:13-bk-16079-SDR, Adv. No. 1:18-ap-1005-SDR, 2018 WL 2997053, at *6 (Bankr. E.D. Tenn. June 12, 2018). The court noted that, although the utility deposits were not part of the disputed property, "their absence from the Excluded Assets exhibit when they were apparently intended to be excluded, raises the inference that the Excluded Assets exhibit is incomplete." *Id.*

Second, the court found that Section 2.05 and Exhibit 2.05 contain conflicting clauses with respect to the deadline for parties to make changes to the Excluded Assets exhibit. *Id.* at *7. Section 2.05 provides that the parties "may mutually agree to amend, modify, or supplement" Exhibit 2.05 "[s]ubsequent to the Effective Date . . . *until the Closing*," whereas Exhibit 2.05 itself provides that the parties would work to finalize the exhibit "as soon as practicable *after the Effective Date*." [Doc. No. 44-1, at 12, 33 (emphasis added)]. As the court noted, "[t]he agreement thus contains two different timelines for supplementing the Excluded Assets exhibit, one with a deadline at closing, and one without a specific deadline." *In re HC Liquidation, Inc.*, 2018 WL 2997053, at *7. The court found that because the parties never supplemented Exhibit 2.05, ambiguity was

created with respect to whether the parties ever "reached a final meeting of the minds regarding which assets were to be excluded from the sale. The court simply cannot determine from this language whether the disputed property in this case was clearly meant to be excluded from the sale or not." *Id.* Now, the parties still disagree about whether Exhibit 2.05 was supposed to be completed but was not or whether it was purposefully left blank because no assets were to be excluded. [Doc. No. 55, at 5; Doc. No. 60, at 4].

Third, the court found that "the proviso in Paragraph 2.01 that the assets being sold were those described in Exhibit 2.01 creates some ambiguity when read in concert with Paragraph 1.02(b)'s recitation that the term Assets means broadly "all…assets" except those defined as Excluded Assets." *Id.* at *8 (citing Doc. No. 1-4, at 7, 12). The ambiguity identified by the court was that "Paragraph 2.01 apparently provides an additional limitation on which assets were to be sold that is not contemplated by Paragraph 1.02(b)." *Id.*

The final ambiguity, and the one most relevant on summary judgment, involves the multiple versions of Exhibit 2.01, which is the list of assets that were to be sold. In its prior opinion, the court found that the APA used at closing contains two versions of Exhibit 2.01. *Id.* at *7. The first version, contains the language that "[t]he Parties agree to work together, in good faith, to finalize this exhibit as soon as practicable after the Effective Date." [Doc. No. 44-1, at 32]. As the court noted, "this language raises the reasonable inference that the parties had not agreed to the final list of assets to be sold and intended to supplement the exhibit." *In re HC Liquidation, Inc.*, 2018 WL 2997053, at *7. A second version of Exhibit 2.01 is also attached to the APA and titled, "Exhibit 2.01 to Asset Purchase Agreement (Updated as of June 16, 2014)." [Doc. No. 44-1, at 41]. As noted above, the June 16 Exhibit 2.01 contains a list of accounts receivable, raw materials,

and inventory. [*Id.* at 41-125]. It does not contain a schedule for cash on hand, bank accounts, or bank deposits, nor does it list the CD at issue.

The court found that these two versions of Exhibit 2.01 filed in the closing package (i.e., the March 19 and June 16 Exhibits 2.01) created an ambiguity foreclosing partial judgment on the pleadings:

> Paragraph 2.01 and its two attached exhibits are ambiguous. The court cannot determine whether the parties were to work in good faith to finalize the list of assets after the Effective Date or whether the list of assets to be sold was as specified in the second version of Exhibit 2.01.

> To the extent that the second, more detailed list of assets is operative, that list does not contain the disputed property. In contract interpretation, particular and specific provisions control over general provisions. *See Lamar Adver. Co. v. Big Pass Partners*, 313 S.W.3d 779, 794-95 (Tenn. Ct. App. 2009) (citations omitted) (specific assets listed in APA controlled over general provisions). The court cannot determine based on the four corners of the APA which version of Exhibit 2.01 is controlling. However, if the court were to find that the second, detailed exhibit controls, it would be hard pressed to find that assets that were not on that exhibit were conveyed.

*In re HC Liquidation, Inc.*, 2018 WL 2997053, at *7.

There is some confusion in the record about whether the "blank" March 19 Exhibit 2.01 was included in the closing package as the court previously found. The Trustee says that it was not. [Doc. No. 58, at 2]. The Plaintiff does not directly address this issue. From the court's review, the March 19 Exhibit 2.01 is contained in the closing package filed as part of the amended complaint. [Doc. No. 44-1, at 32]. If the court has misunderstood the facts, it asks that the parties clarify this issue at trial.

Into this confusion, the parties have now pointed out that there is yet another version of Exhibit 2.01, the one filed on the docket on April 16, 2014. [Case No. 1:13-bk-16079-SDR, Doc. No. 124]. In its prior opinion, the court failed to address the existence of the April 16 Exhibit 2.01. Although it was filed on the docket in the debtor's bankruptcy case, it was not included in the

closing package filed with the court as part of the complaint in this adversary proceeding. Nevertheless, the Plaintiff now contends that the court approved this version of Exhibit 2.01 when it entered its order approving sale on June 6, 2014. [Doc. No. 56, at ¶ 5].

The April 16 Exhibit 2.01 contains the "catch-all" paragraph that the Plaintiff argues includes the disputed property in the sale whereas the March 19 and June 16 Exhibits 2.01 do not. The parties do not dispute that the April 16 Exhibit 2.01 contains the "catch-all" language. [Doc. No. 56, at ¶ 6; Doc. No. 60, at 6]. However, the Trustee argues that the court did not approve the exhibits to the APA, many of which were incomplete and subject to revision at some later date. [Doc. No. 60, at ¶¶ 5-6]. The court notes in this regard that the order approving the sale refers only to the APA dated March 18, 2014, and the subsequent price amendment, but does not specifically reference the April 16 Exhibit 2.01 filed at Doc. No. 124. [Doc. No. 153, at 2]. The Trustee also disputes whether the "catch-all" paragraph even applies to the disputed property, contending that it only applies to the category of Clothing Patterns and Designs, the category of asset in the April 16 Exhibit 2.01 under which he contends the "catch-all" paragraph is located. [Doc. No. 60, at ¶¶ 6, 10].

Following the court's opinion denying the Plaintiff's motion for partial summary judgment, the parties conducted discovery. To explain the ambiguities the court found in the agreement, the parties have each submitted evidence that they contend shows the parties' true intent. The Plaintiff has pointed to affidavits of Mr. Aiken, Mr. Hopper, and Mr. Mason, who were each involved in negotiating the sale terms. None of the affidavits state that the CD was a subject of negotiation or itemized on the list of assets to be sold. Instead, the affidavits relate that these men intended for the June 16 Exhibit 2.01 to supplement the earlier filed April 16 version.[10] Adding the April 16

_____

10 There is no allegation made in the affidavits regarding the finalization of Exhibit 2.05 or lack thereof.

Exhibit 2.01 to the exhibit actually attached at closing would have the effect of incorporating the "catch-all" paragraph into the final agreement, which the Plaintiff contends, when read along with the bill of sale, conveys the disputed property. Without this parole evidence from the Plaintiff regarding the intention of the parties, the final version of Exhibit 2.01 provided with the closing package would not include the "catch-all" language.

For his part, the Trustee points to parole evidence of intent in the form of statements made and actions taken by officers of the Plaintiff after the sale that create an issue of fact as to whether the Plaintiff believed it owned the disputed property. For example, the Trustee points out that the Plaintiff has not listed the CD on its audited financial statements since the sale. The Trustee also points out that the Plaintiff's CFO, Ms. Chastain, told the Trustee in December 2014 "that the CD had not been conveyed to Plaintiff in the sale," and she "assisted the Trustee for the next 18 months in providing documents to enable him to get two reductions in the CD from the state's pledge." [Doc. No. 61, at ¶¶ 17, 19]. The Trustee listed the CD as an asset of the debtor's chapter 7 estate at the outset of his administration, took possession of it and titled in his name, and obtained reductions in October 2016 and June 2017, yet the Plaintiff did not notify the Trustee of any dispute over the funds until September 2017.

As the court found in its prior opinion, the agreement is ambiguous and parol evidence is needed to show the parties' intent. The parties have supplied evidence on the parties' intent, yet the court is constrained in the same way that it was in its prior opinion. Two officers of the Plaintiff, Ms. Chastain and Mr. Mason, had different views on whether the CD was sold. In a contract dispute, "summary judgment may be appropriate when the documents and evidence underlying the contract are undisputed and there is no question as to intent." *Cook v. Little Caesar Enterps., Inc.*, 210 F.3d 653, 655–56 (6th Cir. 2000) (citing *P.F. Manley v. Plasti-Line, Inc.*, 808 F.2d 468,

471 (6th Cir. 1987)). When the language of a contract is unambiguous, "the meaning of the language is a question of law and the court must discern the parties' intent from the words used in the instrument." *Consumers Power Co. v. Amoco Prod. Co.*, 208 F.3d 212, 2000 WL 245438, at *4 (6th Cir. 2000) (Table) (citing *Taggart v. U.S.*, 880 F.2d 867, 870 (6th Cir. 1989)). Disputed issues of contractual intent are typically considered factual issues which preclude a grant of summary judgment. *Id.* (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 179 (6th Cir. 1996)). Where a contract presents an unresolved ambiguity, "the ambiguity presents a question of fact for the fact-finder." *Bolson Materials Int'l Corp. v. 3D Sys. Corp.*, 746 F. App'x 445, 451–52 (6th Cir. 2018) (internal quotation marks omitted); *see also P.F. Manley*, 808 F.2d at 471 ("[S]ummary judgment may be proper when the documents in question are undisputed and reveal that no question exists as to intent." (citation omitted)).

The overarching principle of contract construction is "to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. Jan. 18, 2019) (citation omitted). The Tennessee Supreme Court has noted that the lodestar of contract interpretation remains the written words of the contract. *Id.* However, the Tennessee Supreme Court has also endorsed a contextual approach to contract interpretation. *Id.* ("Tennessee cases cite both textualist and contextualist principles; consideration of context evidence does not eclipse other canons of contract interpretation but rather cooperates with them."). Tennessee follows the rule of practical construction, which provides "that the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered." *Id.* at 693 n.21 (quoting *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 333-35 (Tenn. 1983)); *see also Beckwith v. LBMC, P.C.*, No. M2017-00972-COA-R3-CV, 2019

WL 1306201, at *5 (Tenn. Ct. App. Mar. 21, 2019) ("The parties' actions in carrying out a contract can be strong evidence of the intended meaning of the contract, employed by courts as a rule of practical construction.") (collecting cases). The rule of practical construction applies when the contract is ambiguous. *Beckwith*, 2019 WL 1306201, at *5.

In this case, the court has found that the language describing the assets purchased and excluded is inconsistent and ambiguous. The parole evidence submitted by the parties, however, fails to clear up these ambiguities. The court acknowledges the affidavits filed by the Plaintiff. However, the Trustee has also submitted evidence relevant to the parties' intent. The evidence provided by the Plaintiff is contradicted, for example, by the actions of the Plaintiff's CFO post-closing in aid of the Trustee's liquidation of the CD and by the failure to include the CD on the Plaintiff's financial statements. The court finds that there is a genuine dispute of material fact with respect to whether the parties intended to convey the disputed property based on the Plaintiff's post-closing actions and statements. As the moving party, it is the Plaintiff's burden to show conclusively that no genuine issue of material facts exists. When considering the Trustee's evidence and viewing the facts and inferences in the light most favorable to the Trustee, the court concludes that summary judgment is improper.

## VI.    Conclusion

Accordingly, the court will DENY the Plaintiff's motion for partial summary judgment. [Doc. No. 57]. Because the court has found that there is a genuine dispute of material fact precluding summary judgment, the court finds it unnecessary to address the parties' arguments with respect to the affirmative defenses raised by the Trustee and will pretermit discussion thereof.

A separate order will enter.

# # #